IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  12-cv-00753-LTB

THOMAS JANSEN,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.

---

## ORDER

---

       Plaintiff, Thomas Jansen, on behalf of his deceased wife, Marilyn J. Jansen, appeals from

the Social Security Administration Commissioner's (the "Commissioner") final decision denying

his wife's application for Disability Insurance Benefits ("DIB"), filed pursuant to Title II of the

Social Security Act (the "SSA"), 42 U.S.C. §§ 401-433.  Jurisdiction is proper under 42 U.S.C. §

405(g).  Oral argument will not materially aid in resolving this appeal.  After considering the

parties' arguments and the administrative record, for the reasons below, I affirm the

Commissioner's final order.

## I.  STATEMENT OF THE CASE

       Plaintiff seeks judicial review of the Commissioner's decision denying her October 25,

2007 application for DIB. [Administrative Record ("AR") Doc. # 7-5, 2-6].  Her application was

initially denied at the administrative level.  [*Id.* at 7-4, 2-5].  An Administrative Law Judge

("ALJ") subsequently conducted a hearing on April 22, 2010 [*Id.* at 7-2, 27-72], and issued a

written ruling on May 26, 2010 [*Id.* at 14-26].  The ALJ denied Plaintiff's application on the

basis that she was not disabled during the relevant time period because she was capable of

performing past relevant work and alternatively could perform work on the national economy

given her residual functional capacity ("RFC"), age, education, and work experience.  [*Id.*]

Plaintiff appealed the denial of her application, and submitted additional evidence to the Social

Security Administration Appeals Council ("Appeals Council").  [*Id.* at 2-4].  On February 7,

2012, the Appeals Council made the new evidence part of the record, but it declined to review

the decision of the ALJ, making the denial final for the purpose of judicial review.  [*Id.*]  In

denying review, the Appeals Council informed Plaintiff that it "considered the reasons [Plaintiff]

disagree[d] with the decision and the additional evidence listed on the enclosed Order of Appeals

Council.  [It] found this information does not provide a basis for changing the Administrative

Law Judge's decision."  [*Id.* at 2-3].

  Plaintiff timely filed her Complaint with this Court seeking review of the

Commissioner's final decision.  [Doc. # 1].

## II.  FACTS

  The facts are largely undisputed and extensively provided in the ALJ's order.  As such, I

provide a limited factual background as relevant here.

  Plaintiff was born on February 15, 1950, was 54 years old on her alleged onset date of

January 1, 2005, and was 60 at the time of the ALJ's decision.  [*Id.* at 7-2, 33].  She attended

three years of college, but did not obtain a degree or certificate, and her past relevant work

history consists of office helper, loan processor, data entry clerk, and clerical worker .  [*Id.*]

Plaintiff alleges that she became disabled on January 1, 2005, and has suffered from severe

migraine headaches since age 21.  [*Id.* at 7-9, 86].  Pursuant to 20 C.F.R. § 404.130, in order to

be eligible for benefits, Plaintiff must prove that her disability began before the date through

which she remained insured, which in this case was September 30, 2005. [*Id.* at 7-5, 22]. Thus here, the relevant time period for determining disability is January 1, 2005, through September 30, 2005. [*See id.*]; 20 C.F.R. § 404.130.

During the relevant time period Plaintiff earned no income. [*Id.* at 7-5, 7]. She received treatment from Dr. Updike, her primary care physician at Conifer Mountain Family Medicine on January 5, 2005, and March 28, 2005, in which she reported pulsating migraines lasting for several days. [*Id.* at 7-8, 25-28]. Her condition was reported as stable throughout her treatment at Conifer Mountain Family Medicine, by the various physicians who treated her, including Dr. Updike and Dr. Villavicencio. [*Id.*]

She also received treatment from Dr. Gilder, a neurologist she began seeing in 1996. [*Id.* at 7-2, 54 & 7-9. 26-33]. During the relevant time period Plaintiff saw Dr. Gilder three times, on March 21, 2005, June 29, 2005, and September 28, 2005, in which she reported an average of four migraines per month, lasting approximately three to four days each. [*Id.*] Dr. Gilder reported Plaintiff's condition at that time to be stable. [*Id.*] In June 2005, Plaintiff reported an unusual amount of headaches due to hospitalization for an appendectomy. [*Id.* at 7-9, 30]. Throughout the relevant period Plaintiff continued use of multiple medications for treatment of her migraines including Lexapro, Stadol, and Promethazine. [*Id.* at 7-9. 25-28 & 7-9, 26-33].

## III. LAW

To qualify for DIB under sections 216(i) and 223 of the SSA, an individual must meet the insured status requirements of these sections, be under age 65, file an application for DIB for a period of disability, and be "disabled" as defined by the SSA. 42 U.S.C. §§ 416(i), 423. A Five-Step sequential evaluation process is used to determine whether a claimant is disabled under the

SSA, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.§ 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).

Step One asks whether the claimant is presently engaged in substantial gainful activity. If she is, DIB is denied. *See* 20 C.F.R. § 404.1520. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments, as governed by 20 C.F.R. § 404.1520(c). If the claimant is unable to show that her impairment(s) would have more than a minimal effect on her ability to do basic work activities, she is not eligible for DIB. *See* 20 C.F.R. § 404.1520(c). Step Three then assesses whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the impairment is not listed, she is not presumed to be conclusively disabled. Step Four then requires the claimant to show that her impairment(s) and assessed Residual Functional Capacity ("RFC") prevent her from performing work that she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. *See* 20 C.F.R. §§ 404.1520(e), (f). Finally, if the claimant establishes a *prima facie* case of disability based on the previous four steps, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of her age, education and work experience. *See* 20 C.F.R. § 404.1520(g).

As relevant here, a claimant is required to establish that she became disabled prior to the expiration of her insured status.  20 C.F.R. § 404.130; *see also Potter v. Sec'y of Health & Human Servs.,* 905 F.2d 1346, 1347-48 (10th Cir. 1990).

## IV.  ALJ's RULING

The ALJ found that Plaintiff had met the insured requirements of the SSA through September 30, 2005.  [AR Doc. # 7-2, 19].  She ruled that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 1, 2005, through her date last insured of September 30, 2005.  [*Id.*]  The ALJ found that through the date last insured, the Plaintiff had a sufficiently severe impairment due to her migraine headaches (Step Two).  [*Id.*]  However, the ALJ then determined that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled one of the listed impairments (Step Three) in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  [*Id.* at 20].  Because the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equals a listed impairment, she then assessed Plaintiff's RFC.  [*Id.*].

The ALJ evaluated the evidence and found that through the date last insured, Plaintiff had the RFC to perform work "at all exertional levels defined in 20 C.F.R. § 404.1567(c), except that the work should be non-production oriented," involve minimal direct contact with the public, be restricted to a relatively clean work environment with exposure to no more than low levels of pollutants and a stable temperature, and be in an environment that permits her to avoid areas of very bright light and extremely loud noise.  [*Id.* at 20-24].  As a result of Plaintiff's RFC assessment, the ALJ found that Plaintiff was able to perform her past relevant work as a data entry clerk (Step 4).  [*Id.* at 24-26].  Although the ALJ concluded at Step Four that Plaintiff was

able to perform past relevant work, the ALJ continued to Step Five, and under that Step

concluded that there were other jobs existing in the national economy that Plaintiff was also able

to perform.  [*Id.* at 25-26].  Consequently, the ALJ concluded that Plaintiff was not disabled

between her alleged onset date and the date last insured. [*Id.* at 26].

## V.  STANDARD OF REVIEW

I review the Commissioner's decision (expressed here as the ruling of the ALJ) "to

determine whether the factual findings are supported by substantial evidence in light of the entire

record and to determine whether the correct legal standards were applied."  *Williamson v.*

*Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003).  My review of the factual findings is to

determine whether they, "are based upon substantial evidence, and inferences reasonably drawn

therefrom.  If they are so supported, they are conclusive upon the reviewing court and may not

be disturbed."  *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).  "Substantial

evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (quotations omitted).  It

requires "more than a scintilla but less than a preponderance."  *Zoltanski v. F.A.A.*, 372 F.3d

1195, 1200 (10th Cir. 2004).

## VI.  APPEAL

On appeal Plaintiff challenges to the ALJ's determinations in Steps Three, Four, and

Five.  Plaintiff also contends that the allegedly new evidence provided to the Appeals Council

should be considered.  I address each of Plaintiff's arguments in turn below.

## A.      ALJ's Step Three Analysis

The ALJ found at Step Two that Plaintiff suffered a severe impairment from migraine

headaches.  [AR Doc. # 7-2, 19].  At Step Three, the ALJ concluded this severe impairment did

not meet or equal a Listed Impairment.  [*Id*. at 20].  Because a Listed Impairment was not found,

the ALJ moved to Step Four of the evaluation process.  [*Id.*]  Plaintiff challenges the ALJ's Step

Three conclusion.  Specifically, Plaintiff contends that the ALJ did not attempt to secure the

opinion of a medical expert to determine medical equivalence, contrary to the requirements of 20

C.F.R. § 404.1526(b) and Social Security Administration Ruling  ("SSR") 96-6.  Plaintiff's

argument lacks merit.

The Commissioner's regulations provide that the determination as to whether a particular

medical condition meets or equals a Listed Impairment is a medical judgment, made at the initial

and reconsideration levels by the Commissioner's designated physicians and consultative

medical specialists.  20 C.F.R. § 404.1526.  Here, the record contains an opinion of a state

agency physician that the severity of Plaintiff's impairments did not meet or equal any of the

listings.  [AR Doc. # 7-4, 2-4].

Additionally, when SSR 96-6 is read as a whole, and in full context, it is clear that it does

not require the ALJ to provide a new medical evaluation for a claimant whenever a state medical

or psychological consultant has addressed the issue of equivalency.  SSR 96-6p, [2002

Supplementary Pamphlet] Soc. Security Reporting Service: Rulings (West) at 131.  Instead, the

ruling requires the ALJ to accept findings made by a physician "designated by the

Commissioner" as expert opinion evidence.  20 C.F.R. §§ 404.1526(c), 416.926(c) (providing

that a state medical consultant is considered a physician "designated by the Commissioner").

Indeed, "the requirement to receive expert opinion evidence into the record" on the issue of

equivalence "may be satisfied by [various types of] documents signed by a State agency medical

or psychological consultant." SSR 96-6p, [2002 Supplementary Pamphlet] Soc. Security

Reporting Service: Rulings (West) at 131.  In this case, the ALJ satisfied the requirements of

both 20 C.F.R. § 404.1526(b) and SSR 96-6p by receiving into evidence the opinion of a state

physician addressing the issue of whether Plaintiff's condition was equivalent to any listed

impairment.

Although Plaintiff correctly argues that another part of SSR 96-6p directs the ALJ to

"obtain an updated medical opinion from a medical expert," that directive only applies to certain

conditions which are not applicable here.  *Id.* at 132.  Furthermore, the burden of establishing

disability under the Listed Impairments was on the Plaintiff and Plaintiff failed to adequately

specify how her condition met or equaled any Listed Impairment.  *See Bernal v. Bowen*, 851

F.2d 297, 300 (10th Cir. 1988) (indicating it was claimant's responsibility to elicit direct clinical

findings from his physician as to the presence of Listings requirements).  She offered no

evidence that any physician supported her position as to medical equivalency and she failed to

present medical findings evidencing that her condition was equal in severity to all the criteria for

any listed impairment.  *See Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885 (1990) (Plaintiff

did not meet her burden where she offered no evidence that any physician supported her position

and failed to present medical findings evidencing her conditions were equal in severity to all the

criteria for the one most similar listed impairment); *Ostronski v. Chater*, 94 F.3d 413 (8th Cir.

1996).

In summary, there is substantial evidence in the record as a whole to support the

conclusion of the ALJ in Step Three and as such, the ALJ's Step Three evaluation is affirmed.

**B.     ALJ's Step Four Analysis**

Plaintiff challenges the ALJ's determinations in Step Four on three grounds. First, Plaintiff contends that the ALJ's evaluation of Plaintiff's treating physician, Dr. Beverly Gilder, was improper. Second, Plaintiff challenges the ALJ's credibility determinations as to Plaintiff's testimony, the testimony of Plaintiff's husband Thomas Jansen, and the testimony of Plaintiff's friend Linda Brown. Third, Plaintiff contends that the ALJ erred in her RFC analysis.

**1.     ALJ's Evaluation of Treating Physician's Opinion**

Plaintiff argues that the opinion of her treating physician, Dr. Gilder, was well supported by the evidence, not contradicted by any other medical evidence, and thus should have been given controlling weight. Further, Plaintiff argues that the ALJ failed to explain what weight, if any, she assigned to Dr. Gilder's opinions. For the reasons below, I disagree.

The parties do not dispute that Dr. Gilder was a treating source. According to the "treating physician rule," the Commissioner will generally "give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2). In fact, "[a] treating physician's opinion must be given substantial weight unless good cause is shown to disregard it." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1995). A treating physician's opinion is accorded this weight because of the unique perspective they have to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).

When assessing how much weight to give a treating source opinion, the ALJ must complete a two-step inquiry, each step of which is analytically distinct. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The ALJ must first determine whether the opinion is conclusive-that is, whether it is to be accorded "controlling weight" on the matter to which it relates. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *accord Krauser*, 638 F.3d at 1330. To do so, the ALJ:

> [M]ust first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. [ . . . ] [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Id.* (*applying* SSR 96-2p, 1996 WL 374188, at *2) (internal quotation marks and citations omitted); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

If, however, a treating physician's opinion is not entitled to controlling weight, the ALJ must proceed to the next step because, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Id.* At Step Two, "the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330. If this is not done, remand is mandatory. *Id.* As SSR 96-2p explains:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record *means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected*. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ ] 404.1527 and 416.927. *In many cases, a treating source's medical opinion will be entitled*

10

> *to the greatest weight and should be adopted, even if it does not meet the test for*
> *controlling weight.*

*Id.* (citing SSR 96-2p, 1996 WL 374188, at *4) (emphasis added).  Hence, the absence of a

condition for controlling weight raises, but does not resolve the second, distinct question of how

much weight to give the opinion.  *Id.* at 1330-31 (*citing Langley*, 373 F.3d at 1120) (holding that

while absence of objective testing provided basis for denying controlling weight to treating

physician's opinion, "[t]he ALJ was not entitled, however, to completely reject [it] on this

basis")).  In weighing the opinion, the ALJ must consider the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2)
> the nature and extent of the treatment relationship, including the treatment
> provided and the kind of examination or testing performed; (3) the degree to
> which the physician's opinion is supported by relevant evidence; (4) consistency
> between the opinion and the record as a whole; (5) whether or not the physician is
> a specialist in the area upon which an opinion is rendered; and (6) other factors
> brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331.  In applying these factors, "an ALJ must 'give good reasons in the notice of

determination or decision' for the weight [s]he ultimatel[y] assign[s] the opinion." *Watkins*, 350

F.3d at 1300 (*quoting* 20 C.F.R. § 404.1527(d)(2)); *see also* SSR 96-2p, 1996 WL 374188, at *5;

*Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).  Without these findings, remand is

required.  *Watkins*, 350 F.3d at 1300-01; *accord Krauser*, 638 F.3d at 1330.  Lastly, if the ALJ

rejects the opinion entirely, she must give "specific, legitimate reasons" for doing so.  *Watkins*,

350 F.3d at 1301.

Here, Plaintiff contends that the ALJ erred by improperly rejecting the opinion of Dr.

Gilder, Plaintiff's treating neurologist.  In addition to Dr. Gilder's treatment notes, Dr. Gilder

provided her opinion as to Plaintiff's condition on two worksheets, one being a worksheet of

questions provided to Dr. Gilder to answer by Plaintiff's attorney, and the other entitled

"Headaches Residual Functional Capacity Questionnaire."  [AR Doc. # 7-10, 29-31 & 7-9, 4-9].

On these worksheets Dr. Gilder concluded that Plaintiff, among other things, suffered from

approximately four migraines a month, whose symptoms included nausea/vomiting,

photosensitivity, mood changes, and mental confusion/inability to concentrate.  [*Id.* at 7-9, 4].

Dr. Gilder provided that Plaintiff's migraines were triggered, and exacerbated, by

bright/fluorescent lights, menstruation, stress, noise, and weather changes.  [*Id*. at 5].  She stated

that typical treatment for Plaintiff's migraines included prescribed medication and lying in a dark

room.  [*Id*.].  When taken Plaintiff's medications, Dr. Gilder noted, caused cognitive issues for

Plaintiff.  [*Id*. at 7].  Dr. Gilder discussed Plaintiff's ability to work and provided that: Plaintiff's

condition was likely to last more than twelve months; when Plaintiff had a migraine Plaintiff

would be generally precluded from performing even basic work activities and unable to attend

work; and Plaintiff's need to miss work would require her to take more than five unforeseen

breaks from working a month.  [*Id.*]  Dr. Gilder also provided that Plaintiff was able to perform

low stress jobs.  [*Id.*]

In determining that Dr. Gilder's opinions were not entitled to controlling weight, the ALJ

explained that Dr. Gilder's opinions were not well-supported by medically acceptable clinical or

laboratory diagnostic techniques, and that Dr. Gilder's opinions in the 2008 and 2010 worksheets

were inconsistent with other substantial evidence in the record including her own examination

records from 2005.  [*Id.* at 7-2, 23-24].  The ALJ's determination at this step was proper.

*Krauser*, 638 F.3d at 1331 (holding that an absence of objective testing provides a basis for

denying controlling weight to treating physician's opinion).

The ALJ then moved to the second step of the analysis and provided the weight to be given to Dr. Gilder's opinions in her examination records and the 2008 and 2010 worksheets.  In determining that Dr. Gilder's opinions in the worksheets from 2008 and 2010 were not entitled significant weight, the ALJ explicitly cited two factors provided in 20 C.F.R. § 404.1527(c): (1) Dr. Gilder's opinions in the worksheets were not supported by objective medical findings (i.e., Dr. Gilder failed to list a single medical finding with her opinions); and (2) Dr. Gilder's opinions were not consistent with the other substantial evidence, including her own examination records during the relevant time period, (AR Doc. # 7-2, 20-24).  *See* 20 C.F.R. § 404.1527(c)(3) (supportability); (c)(2)(consistency).  An ALJ is not required to "discuss all the § 404.1527(c) factors for each of the medical opinions before him."  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).  In the instant case the reasons given by the ALJ are "sufficiently specific to make clear . . . the reason" for the weight the ALJ gave to Dr. Gilder's opinions in the 2008 and 2010 worksheets.  *See Langley*, 373 F.3d at 1119.

The ALJ then gave significant weight to Dr. Gilder's opinions in her examination records.  [AR Doc. # 7-2, 20-24].  In doing so, the ALJ discussed that Dr. Gilder's examination records were recorded contemporaneous with Plaintiff's examinations, and in her examination records Dr. Gilder recorded what she and Plaintiff discussed during their visits.  [*Id.*]  Among the records considered by the ALJ were Dr. Gilder's treatment notes from September 1996 through 2008, as well as the prescription medications Dr. Gilder prescribed to Plaintiff.  [AR Doc. # 7-9, 10-78].  From 1996 through 2008 Plaintiff saw Dr. Gilder approximately every three to six months for "follow-up appointments regarding her migraines."  [*Id*]  Dr. Gilder stated that for the majority of this time Plaintiff's migraines were stable, and explained any adjustments or changes

13

in Plaintiff's medications. [*Id.*]  Plaintiff purported to suffer approximately 2-4 migraines a month and discussed her life and daily activities with Dr. Gilder including caring for her horses and dogs, and competing in annual horse shows.  [*Id.*]  Throughout her treatment notes, Dr. Gilder also stated several times that Plaintiff was experiencing headaches that usually responded well to the medication regiment she has prescribed.  [*Id.*]  In her treatment notes from 2001 through 2008, Dr. Gilder consistently opined that Plaintiff was not under distress, her migraines were stable, and had been mentally alert.  [*Id.*]

The Court's role is not to reweigh the evidence or substitute its judgment for that of the Commissioner.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  In my limited reviewing capacity and because the ALJ did not reject Dr. Gilder's opinion entirely and provided adequate reasons for her partial rejection, I find that the ALJ's reasons for disregarding Dr. Gilder's opinions in her worksheets, and accepting those in her examination records are both legitimate and sufficiently specific.  *Watkins*, 350 F.3d at 1301.  In her decision, the ALJ satisfied the requirement of "confirm[ing] that the opinion is consistent [or inconsistent] with other substantial evidence in the record."  *Watkins*, 350 F.3d at 1300.  In over three pages of analysis, the ALJ discusses medical findings contrary to the 2008 and 2010 worksheets including Dr. Gilder's own examination records, and those of Dr. Updike, Dr. Villavicencio, and Dr. Lubeck.  [AR Doc. # 7-2, 20-24].  Accordingly, I find that the ALJ's decision was supported by substantial evidence.

### 2.   ALJ's Credibility Determinations

Plaintiff challenges the ALJ's credibility determination as to the Plaintiff, Plaintiff's husband, Mr. Thomas Jansen, and Plaintiff's friend, Ms. Linda Brown.

Generally, credibility determinations are the province of the ALJ, who is "the individual optimally positioned to observe and assess witness credibility." *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir. 1996) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). Although the court ordinarily defers to the ALJ as trier of fact on credibility, deference is not an absolute rule. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (citations omitted). While "[c]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence," the ALJ must link his or her credibility finding to substantial evidence. *Id.* (internal citations omitted). This entails that the ALJ explain why specific evidence led to a conclusion that the claimant's subjective complaints were not credible. *Id.* These findings as to credibility should be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (*quoting Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted)). The ALJ must articulate specific reasons for questioning the claimant's credibility where subjective pain testimony is critical. *Kent v. Apfel*, 75 F. Supp. 2d 1170, 1182 (D. Kan. 1999) (*citing Kepler*, 68 F.3d at 391).

To be disabling, pain must be severe enough to preclude any substantial gainful employment whether by itself or in combination with other impairments. *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986). The Tenth Circuit has set forth the following framework for analyzing evidence of allegedly disabling pain: (1) whether claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, claimant's pain is in fact

disabling.  *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (*citing Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).

Objective evidence includes physiological and psychological evidence that can be verified by external testing.  *Thompson*, 987 F.2d at 1488-89.  Subjective evidence comprises of statements from the claimant and other witnesses that are evaluated on their credibility.  *Id.* at 1489.  If objective medical evidence shows a pain-producing impairment, the ALJ must then consider the claimant's allegations of severe pain and decide whether to believe them.  *Id.* Factors to be considered at this point include:

> [T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or non-medical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony and objective medical evidence.

*Kepler*, 68 F.3d at 391 (*quoting Thompson*, 987 F.2d at 1489).

### a.  ALJ's Determination of Plaintiff's Credibility

Plaintiff contends that the ALJ did not apply the correct legal standard to evaluate the credibility of her testimony regarding her subjective complaints of pain.  She argues that the ALJ's credibility determination was in error because the ALJ disregarded her subjective complaints of pain, her purportedly limited daily activities, and the impact of her medications.

In her opinion, the ALJ found that there was objective medical evidence of a pain-producing impairment, and that there was a nexus between the impairment and the allegations of pain.  [AR Doc # 7-2, 19].  However, after her consideration of the record the ALJ concluded that Plaintiff's statements regarding "the intensity, persistence and limiting effects of these symptoms" were not credible to the extent that "they are inconsistent with the" RFC assessment.

16

[*Id.* at 23]. The ALJ concluded that Plaintiff's pain levels would allow her to do work at "all exertional levels defined in 20 CFR 404.1567(c). [*Id.* at 20]. Despite Plaintiff's assertion to the contrary, the Court finds that the ALJ satisfied the analysis required by *Luna v. Bowen* and, therefore, does not find a basis to reverse on this issue.

Specifically, the ALJ found Plaintiff's testimony with regard to the severity of her pain and her ability to perform any work was not credible. [AR Doc # 7-2, 23-25]. The ALJ discussed several factors she relied upon in finding Plaintiff's pain testimony not credible. *See* SSR 96-7p, 1996 WL 374186, at * 3 (citing factors relevant to credibility determination, including claimant's daily activities; the location, duration, and intensity of claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms); *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004)(stating ALJs "should consider" factors set forth in SSR 96-7p). An ALJ is not, however, required to conduct a "formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Employing "common sense" as a guide, the ALJ's decision is sufficient if it "sets forth the specific evidence he [or she] relies on in evaluating the claimant's credibility." *Id.*; *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012). Here, the ALJ concluded that Plaintiff's daily activities did not support a finding that she is precluded from all types of work activity. [AR Doc # 7-2, 23-25]. The ALJ noted that Plaintiff testified she was able to care for her pets which included two horses and one dog. [*Id.* at 25].

The ALJ also found that Plaintiff's allegations of disabling limitations were not consistent with, or supported by, the objective medical findings in Dr. Gilder's treatment notes,

nor those of  Dr. Updike, Dr. Villavicencio, and Dr. Lubeck. [*Id.* at 21-24].  The ALJ included in her decision the fact that none of Plaintiff's treating physicians opined that she was disabled from all work activity. [*Id.*]  The ALJ pointed out that Dr. Gilder's "Residual Functional Capacity Questionnaire" concluded that Plaintiff could do low stress work. [*Id.* at 7-9, 7].  The ALJ also noted that agency records indicated Plaintiff had accepted employment in 2007 even though she alleged that she was unable to work beginning in January 2005. [*Id.* at 7-2, 22].

Based upon my review of the ALJ's credibility determination and the record, I have determined that the ALJ appropriately and adequately explained with specific evidence her conclusion that Plaintiff's subjective complaints, although limited in themselves, regarding the severity of her pain and her inability to perform any work were not credible.  Furthermore, I find that substantial evidence in the record supports the ALJ's credibility determination.  Because the ALJ's credibility findings "are closely and affirmatively linked to substantial evidence," *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005), the determination should not be disturbed.  Plaintiff's argument with respect to the ALJ's credibility determination asks this Court to reweigh the evidence and to substitute the Court's judgment for that of the Commissioner, and the Court should decline to do so.  *Id.* at 1172. .

### b.  ALJ's Third Party Credibility Determinations

Plaintiff also argues that the ALJ did not provide valid reasons for giving no evidentiary weight to the testimony of her husband, Mr. Thomas Jansen, and friend, Ms Linda Brown.  She claims that the ALJ improperly disregarded their testimony because the ALJ found it inconsistent with the medical records and doctors' notes during the relevant time period and found that it was presented only out of a desire to help Plaintiff.

18

The regulations state that the Commissioner will consider "descriptions and observations of [a claimant's] impairment(s), including limitations that result from [a claimant's] symptoms, such as pain, provided by . . . [claimant's] family, or other persons." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  However, the ALJ is not required to make a specific written finding as to a lay witness's credibility. *See Adams*, 93 F.3d at 715; *see also Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996) (holding that the ALJ's decision was supported by substantial evidence even thought that ALJ did not make express findings as to the credibility of claimant's wife's testimony).

In her decision, the ALJ indicated that she had evaluated the testimony of Mr. Jansen and Ms. Brown.  [AR Doc # 7-2, 24].  While she found their statements to be "well-meaning statements of a good friend and a family member," the ALJ explained that the statements were not based on their observation in any professional capacity.  [*Id.*]  With regard to Mr. Jansen's statements, the ALJ explained that, "[t]he claimant's husband is not medically trained . . . His remarks years after the relevant period are unavoidably colored by his affection for his wife and by the difficulty of recalling a person's exact condition during the time period of January 1, 2005 to September 30, 2005." [*Id.*]  With regard to Ms. Brown's statements, the ALJ explained that, "Ms. Brown does not live with the claimant, and did not observe her on a daily basis during the relevant period." [*Id.*]  The motivation of and relationship between a claimant and the witness is an appropriate factor for the ALJ to consider when assessing the testimony of Plaintiff's husband and friend.  *Adams*, 93 F.3d at 715. The ALJ, therefore, did not err by relying upon this factor in giving no evidentiary weight to their testimony.

19

Additionally, Mr. Jansen's and Ms. Brown's statements were redundant and merely corroborated Plaintiff's accounts of her pain and daily activities, which the ALJ discussed in her decision.  [AR Doc # 7-2, 21-25]; *see also Herron v. Shalala*, 19 F.3d 329, 336 (7th Cir. 1994) (holding that the ALJ did not err by failing to expressly discuss claimant's wife's testimony because the ALJ addressed the same issues in relation to claimant's testimony); *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (same).

In light of the above, I hold that the ALJ did not err in her assessment of Mr. Jansen's and Ms. Brown's credibility.  Furthermore, substantial evidence in the record as a whole supports the ALJ's credibility determinations.

### 3.      ALJ's RFC Assessment

Plaintiff's last Step Four challenge is that the ALJ erred in her RFC determination at phase one of Step Four by failing to include in the RFC assessment any limitations related to viewing computer screens, working with fluorescent lighting, and the number of days Plaintiff would need to miss work.  She also contends that this improper RFC determination corrupted the ALJ's findings at the third phase regarding Plaintiff's ability to perform her past relevant work ("PRW").  I disagree.

At Step Four, the ALJ engages in "a comparative assessment of the claimant's [RFC] and the demands of the work the claimant has done in the past to determine whether the claimant can do h[er] [PRW]."  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).  In *Winfrey*, this court articulated the three phases the ALJ must address to make the Step Four determination:

> Step Four of the sequential analysis . . . is comprised of three phases.  In the first
> phase, the ALJ must evaluate a claimant's physical and mental residual functional
> capacity (RFC), . . . and in the second phase, he must determine the physical and
> mental demands of the claimant's past relevant work . . . In the final phase, the
> ALJ determines whether the claimant has the ability to meet the job demands
> found in phase two despite the mental and/or physical limitations found in phase
> one . . . At each of these phases, the ALJ must make specific findings.

*Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (alterations in original) (citations

omitted) (internal quotation marks omitted).  Specific findings are required at all phases.  *Id.*  At

Step Four the burden of proving disability remains with the claimant.  *Henrie v. U.S. Dep't*

*Health & Human Servs*., 13 F.3d 359, 361 (10th Cir. 1993).  However, the ALJ does have a duty

"of inquiry and factual development."  *Id.*

Regarding the first phase, an ALJ should "assess the nature and extent of [the claimant's]

physical limitations and then determine [the claimant's] [RFC] for work activity on a regular and

continuing basis."  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (alterations in

original) (internal quotation marks omitted).   RFC represents "the most [that the claimant] can

still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  To determine a claimant's RFC,

the ALJ must consider any medical opinions about what the claimant can still do as well as the

claimant's own testimony concerning her limitations, including limitations resulting from pain.

*Id.* § 404.1545(a)(3).

At phase one, the ALJ determined that Plaintiff had the RFC to "perform work at all

exertional levels defined in 20 CFR § 404.1567(c) except that she requires work which is non-

production oriented and involves minimal direct contact with the public so as to avoid exposure

to perfumes and odors."  [AR Doc # 7-2, 20].  The ALJ found that Plaintiff should be "restricted

to a relatively clean work environment with exposure to no more than low levels of pollutants;

and stable temperatures. She is limited to work environments which permit her to avoid areas of very bright lights and extremely loud noise." [*Id*.]   In reaching these conclusions, the ALJ stated that her RFC assessment was "supported by the medical record, the claimant's statements regarding her daily activities and the testimony of the vocational expert."   [*Id*. at 24].   I agree that the record supports this conclusion.

Specifically, the ALJ noted that Plaintiff had been employed at the Midnight Rose Casino after the time of her alleged onset date. [*Id.* at 22].   As the ALJ explained, "if bright lights and loud noises debilitated the claimant with migraine headaches as much as she now alleges, working as a cashier at a casino is an interesting choice of work."   [*Id.*]   Plaintiff's testimony in the hearing before the ALJ also supports the ALJ's limitations.   [*Id*. at 32-59].   Plaintiff provided that she cared for her pets including, in the relevant time period, two horses and a dog.   [*Id.* at 41].   She also testified as to issues with bright lights and loud noises during her migraines.   [*Id.* at 32-50].   Additionally, as discussed above, the ALJ had discredited the part of Dr. Gilder's opinions that were inconsistent with her treatment notes and the treatment notes of Plaintiff's other treating physicians.   Thus, the ALJ's analysis of this phase was sufficient.

At phase two of the *Winfrey* analysis, the ALJ must examine the demands of the claimant's past relevant work.   *Winfrey*, 92 F.3d at 1023.   As the ALJ determined that Plaintiff could return to her previous work as a data entry clerk, I look only at the requirements of that position.   The Plaintiff and a Vocational Expert ("VE") testified before the ALJ as to the requirements of this job.   [AR Doc # 7-2, 26-72].   Plaintiff testified as to her various positions, including data entry clerk.   When she worked at Toyota, Plaintiff explained that she completed "paperwork for people that wanted to buy cars." [*Id.* at 7-2, 44].   She worked in the law library at

Cage Williams where she "tried to pull out what the attorney's wanted," re-shelved and did filing." [*Id*. at 44].  At Knowledge Learning Enterprises/Children's World Learning Centers she worked in the real estate department where she typed letters for various engineers and project managers, answered the phone and did filing.  [*Id.* at 45].  She did secretarial work at Genesee Company.  [*Id.*]

From the VE, the ALJ obtained evidence as to how the job of data entry clerk is performed in the national economy.   [*Id.* at 61].  According to the Dictionary of Occupational Titles, a data entry clerk position may include activity such as: operating a keyboard or other data entry device to enter data into computer or onto magnetic tape or disk for subsequent entry; comparing data entered with source documents, or re-entering data in verification format on screen to detect errors; deleting incorrectly entered data, and re-entering correct data; or compiling, sorting, and verifying the accuracy of data to be entered.  *See* DOT 203.582-054. Relying on the Vocational Expert's testimony and that of Plaintiff, it is clear that Plaintiff performed the job of data entry clerk at a sedentary exertion level with a skill level of 4. [*Id.* at 61]; 20 C.F.R. § 404.1567.  Thus, the ALJ's properly examined Plaintiff's PRW.

In the third phase of the *Winfrey* analysis, the ALJ must determine whether the claimant can meet the job demands of her PRW despite her limitations as found in phase one.  *Winfrey*, 92 F.3d at 1023.  Here, the ALJ concluded that Plaintiff could perform her previous relevant work as a data entry clerk.  [AR Doc # 7-2, 24-26].  The ALJ explained that Plaintiff's RFC "does not include any limitations precluding the performance of her previous semi-skilled work.  In comparing the claimants [RFC] with the physical and mental demands of this work, the [ALJ] [found] that the claimant was able to perform it as actually performed."  [*Id.* at 25].  The ALJ

explained that, "[a]t the hearing, the vocational expert testified that a person with the [RFC] as adopted could perform past work as a data entry clerk." [*Id.*]

After examination of the record, I find that the record supports the ALJ's phase three conclusion. Plaintiff's light and sound limitations, nor the need for a relatively clean and odor-free environment, would not preclude Plaintiff from performing her past work as a data entry clerk. In fact, such a position would be well-suited for someone with the Plaintiff's limitations, as identified by the ALJ in phase one.

Accordingly, I hold that the ALJ did not err in assessing Plaintiff's RFC. Furthermore, substantial evidence in the record as a whole supports the ALJ's determinations.

## C.      ALJ's Step Five Analysis

At Step Five of the sequential evaluation procedure the ALJ must decide whether the claimant can perform any other gainful and substantial work that exists in the national economy. 20 C.F.R. § 404.1520(g). The Commissioner has the burden at Step Five of showing that the claimant is capable of performing such work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). This determination is made on the basis of the claimant's age, education, work experience, and RFC. 20 C.F.R. § 404.1520(g)(1); *Thompson*, 987 F.2d at 1487. Courts have declined to set a rule as to what constitutes a "significant number" of jobs in the national economy for purposes of the Act. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). Instead, the ALJ should make the decision based on the individual merits of the case and common sense. *Id. Trimiar* provides a list of nonexclusive factors for the ALJ to consider, including: the level of a claimant's disability, the reliability of the vocational expert's testimony, the reliability of a

24

claimant's testimony, the distance the claimant can travel to engage in the work, the isolated nature of the jobs identified, and the types and overall availability of the work identified.  *Id.*

Plaintiff argues that the ALJ erred in Step Five of the disability analysis by finding that there were a significant number of jobs available for Plaintiff, and that she was therefore not disabled within the meaning of the Act.  Plaintiff argues that the ALJ failed to consider all of the *Trimiar* factors in making her Step Five determination that there was a significant number of jobs in the national economy that Plaintiff could have performed, and that the ALJ should have been more explicit in analyzing the *Trimiar* factors when she found that a significant number of jobs existed nationally for a person with Plaintiff's RFC.  Plaintiff's argument is without merit.

The Tenth Circuit has held that the *Trimiar* factors, although binding precedent, are not a mandatory list in which in every case each factor must be mechanically analyzed and applied. *Botello v. Astrue*, 376 Fed. Appx. 847, 850-51 (10th Cir. 2010); *Raymond v. Astrue*, 356 F. App'x 173, 178 n.2 (10th Cir. 2009).  In fact the Tenth Circuit explicitly held that when there is a large number of jobs nationally available use of the *Trimiar* factors is not required.  *Raymond*, 356 F. App'x 178 n.2 ("*Trimiar* does not hold that . . . a court must engage in a factoral analysis when the number of jobs [nationally] available is, as here (1.34 million), much larger.")

Citing the hearing testimony of the VE, the ALJ found that Plaintiff could perform the following positions: Retail Marker, DOT 209.587-034, an unskilled position at the light exertional level with approximately 4,970 jobs in Colorado and 341,000 available nationally; Order Filler, DOT 222.487-014, a semi-skilled position at the light exertional level with approximately 2,317 jobs in Colorado and 159,000 jobs nationally; Collator Operator, DOT

208.685-010, a light, unskilled job with approximately 349 jobs in Colorado and 24,700

nationally; Hand Packer, DOT 920.587-018, an unskilled position with a medium exertional

level with approximately 626 jobs in Colorado and 56,000 in the national economy; Porter at a

used car lot, DOT 915.687-022, an unskilled position with a medium exertional level with

approximately 384 in Colorado and 24,000 nationally. [AR Doc. # 7-2, 25-26].  As the ALJ

explained, "[t]hese jobs cited are examples of the many jobs existing in the regional and national

economy." [*Id*. at 26].

Between all of the listed jobs, the ALJ identified over 8,000 jobs in Colorado and over

600,000 jobs available nationally.  I find that this constitutes a "significant number" of jobs that

Plaintiff is capable of performing.  *See Botello*, 376 F. App'x at 850 (declining to remand based

on plaintiff's challenge to number of jobs when jobs in Colorado equaled 757, but there were

67,250 jobs in the national economy); *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) ("it

appears to be well-established that 1,000 jobs is a significant number.")  Applying the reasoning

of *Raymond* and *Botello*, it is clear that the ALJ's significant numbers ruling based solely on the

number of jobs that the VE identified was proper.  Accordingly, the use of the *Trimiar* factors

was not required.

Furthermore, Plaintiff does not argue that any specific factor was not addressed that

should have been, or that any factor warranted explicit discussion.  In reviewing the transcript of

the hearing and the decision of the ALJ, I am convinced that the ALJ gave proper consideration

to these factors.  First, the ALJ considered the combination of impairments possessed by Plaintiff

and acknowledged her migraines in her RFC determination.   Further, I cannot question the

reliability of the VE's testimony.  The ALJ gave due consideration to the education and

26

experience of the VE and probed regarding the VE's conclusion that Plaintiff could perform work that exists in significant numbers. [*Id*. at 59-72].  The ALJ discussed the nature of the jobs, the types, and overall availability of the work identified.  In the hearing before the ALJ, the ALJ asked Plaintiff several questions related to the level of Plaintiff's alleged disability including what her daily activities included and how she felt before, during, and after a migraine.  [AR Doc. # 7-2, 32-59].  At the hearing she asked Plaintiff about her ability to drive and Plaintiff's past driving experiences. [*Id.*] As discussed above, the ALJ addressed the reliability of Plaintiff's testimony.

The ALJ's discussion and record of the hearing indicates that she did in fact "consider" the *Trimiar* factors.  Although the ALJ's decision could have been more explicit on whatever factor, her discussion of the "significant numbers" requirement provides substantial evidence that the ALJ thought about, took into account, and otherwise adhered to the requirement to "consider" the factors in *Trimiar*.  Accordingly, remand is not warranted on this issue.

**D.     Evidence Submitted to the Appeals Council**

Plaintiff argues that the Appeals Council received additional evidence from Plaintiff and as such, the Appeals Council, and this Court, should properly include it in its review of the ALJ's decision.

Additional evidence is considered by the Appeals Council only if it is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision.  *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (*citing* 20 C.F.R. § 404.970(b)).  "Whether [evidence] qualifies as new, material and chronologically relevant is a question of law."  *Id.*

(internal quotation omitted).  Evidence is new if it is not duplicative or cumulative.  *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003).  Evidence is material if "the Secretary's decision might reasonably have been different had the new evidence been before him when his decision was rendered."  *Wilson v. Astrue*, 602 F.3d 1136, 1148 (10th Cir. 2010) (internal quotations and citations omitted).  "If the evidence does qualify and the Appeals Council considered it in connection with the claimant's request for administrative review, it becomes part of the record in evaluating the Commissioner's denial of benefits under the substantial-evidence standard."  *Chambers*, 389 F.3d at 1142.

Here, the Appeals Council stated that it considered the evidence and determined that "this information does not provide a basis for changing the Administrative Law Judge's decision." [AR Doc. # 7-2, 2-3].  When the Appeals Council states that it considered new evidence- as it did here- the Appeals Council is not also required to expressly analyze the evidence.  *See Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006).  I have reviewed that information and agree that the evidence was not material, was duplicative, and cumulative.  I therefore find that the Appeals Council did not err with respect to this issue, and my review of the ALJ's decision, which included the added evidence, is not altered by it.  Thus, I affirm the ALJ's rejection of a Plaintiff's alleged impairment even with the new evidence considered by the Appeals Council augmenting the record.

## VII.  CONCLUSION

For the foregoing reasons, I AFFIRM the Commissioner's final order.


Dated: September   24  , 2013, in Denver, Colorado.

BY THE COURT


  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE